FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 26, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TYLER TOWNSEND,<br><br>        Plaintiff,<br><br>v.<br><br>CAROL SMITH; B. LONGINO; SGT.<br>WESTFALL; SGT. ALDENDORF; J.<br>MARTIN; JAMES KEY; SGT.<br>BOLINGER; and JOHN DOE 1, in<br>their individual and official capacities,<br><br>        Defendants. | No. 2:20-cv-00193-MKD<br><br>ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT<br><br>**ECF No. 38** |

Before the Court is Defendants' Motion for Summary Judgment, filed on November 23, 2021. ECF No. 38. This is a 42 U.S.C. § 1983 civil rights action. ECF No. 15 at 1. Plaintiff alleges that Defendants violated his rights under the First Amendment to the United States Constitution while Plaintiff was in the custody of the Washington Department of Corrections ("WDOC") at the Airway Heights Correctional Center ("AHCC") in April 2020. *See* ECF No. 15. Plaintiff claims fall into two causes of action, censorship and retaliation.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

1    Plaintiff alleges that Defendants Bonnie Longino, James Westfall, James

2    Key, and John Doe 1, now identified as Tracy Schneider,[1] targeted and blocked his

3    outgoing mail to the news media and thereby censored him in violation of the First

4    Amendment.  ECF No. 15 at 14 ¶ 72.  Plaintiff alleges that Defendant Carol Smith

5    told him that he could not send mail to the media and thereby censored him as

6    well.  ECF No. 15 at 14 ¶ 73.  Plaintiff alleges that all eight Defendants took

7    adverse action against him either through a process of infraction or by propagating

8    false statements that led to a mail restriction and infraction, in violation of his right

9    to be free from retaliation for protected First Amendment activities.  ECF No. 15 at

10    14 ¶¶ 74, 75.  Plaintiff seeks declaratory and injunctive relief, and compensatory

11    and punitive damages.  ECF No. 15 at 15-16 ¶¶ A-E.  Defendants move for

12

13

14    [1] Defendants admit in their answer that "John Doe 1" appears to be Tracy

15    Schneider.  ECF No. 24 at 3 ¶ 11, 10 ¶ 53.  However, Tracy Schneider, in her

16    Declaration in Support of Defendants' Motion for Summary Judgment, states that

17    "I am not a Defendant in this lawsuit."  ECF No. 44 at 1 ¶ 1.  Plaintiff omits both

18    John Doe and Tracy Schneider from his response to the motion for summary

19    judgment.  The Court proceeds under Defendants' admission that Tracy Schneider

20    is, in fact, John Doe 1.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 2

1    summary judgment on all claims.  *See* ECF No. 38.  For the reasons stated herein,

2    the Court grants summary judgment as to all claims.

3                                            **BACKGROUND**

4          The undisputed facts are as follows.  In April 2020, Plaintiff was in WDOC

5    custody at AHCC.  ECF No. 24 at 2 ¶ 3; ECF No. 38 at 1 ¶ 1; ECF No. 46 at 2.  In

6    the midst of the COVID-19 pandemic, AHCC officers posted memoranda with

7    information about its COVID-19 policies in its facility for prisoners to view.  ECF

8    No. 39 at 2 ¶ 4, ECF No. 42 at 2-3 ¶ 3.  At some point on or before April 3, 2020,

9    Plaintiff attempted to mail COVID-19 memoranda to a Fox News outlet in

10   Spokane, Washington.  ECF No. 39 at 2 ¶ 2; ECF No. 42-1; ECF No. 46 at 2.

11         On April 3, 2020, Defendant Bonnie Longino, a Mail Processing Driver in

12   the mailroom at AHCC, rejected Plaintiff's outgoing mail that contained the

13   COVID-19 memoranda.  ECF No. 39 at 2 ¶ 3; ECF 46 at 2.  Defendant Longino

14   determined that Plaintiff's mail was in violation of Washington Administrative

15   Code 137-28-220 #053, which prohibits incarcerated persons from possession of

16   items not authorized for retention or receipt, or not issued through approved

17   channels.  ECF No. 39 at 3 ¶ 6; ECF No. 42 at 2-3 ¶ 3; ECF No. 46 at 2-3; *see*

18   WAC 137-28-220.  Defendant Longino believed that Plaintiff obtained the copies

19   of the COVID-19 memoranda by removing them from a wall in a common area.

20   ECF No. 39 at 1 ¶ 4; ECF No. 42 at 2-3 ¶ 5; ECF No. 46 at 2.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 3

Plaintiff appealed the rejection.  ECF No. 39 at 3 ¶ 7; ECF No. 46 at 4.
Pursuant to procedure, the appeal went before Defendant James Westfall, a
Mailroom Sergeant for AHCC, who upheld the rejection.  ECF No. 24 at 2 ¶ 5;
ECF No. 39 at 3 ¶ 7; *see* ECF No. 42-1, Ex. 1.

Alongside the mail rejection, Defendant Longino issued Plaintiff a general
infraction.  ECF No. 39 at 3 ¶ 8; ECF No. 40-1; ECF No. 42 at 2 ¶ 4; ECF No. 42-
1, Ex. 2; ECF No. 46 at 4.  On April 26, 2020, WDOC held a hearing on the
infraction.  ECF No. 39 at 4 ¶ 9, ECF No. 46 at 4.  Defendant Adam Aldendorf, a
Sergeant at AHCC, was the hearing officer.  ECF No. 24 at 3 ¶¶ 6, 23; ECF No. 39
at 3 ¶ 9; ECF No. 40-1 at 2; ECF No. 46 at 4.  Defendant Aldendorf found Plaintiff
guilty based upon staff testimony and issued a reprimand and warning against him.
ECF No. 24 at 5 ¶ 23; ECF No. 39 at 3 ¶ 9; ECF No. 40-1 at 2; ECF No. 46 at 4.
Defendant Randy Bolinger,[2] a Sergeant at AHCC, reviewed the infraction report.
ECF No. 24 at 5 ¶ 23.

On April 27, 2022, the day following the hearing, Plaintiff filed a grievance
over the infraction.  ECF No. 39 at 4 ¶ 10; ECF No. 42 at 2 ¶ 4; ECF No. 46 at 4.

---

[2] Defendants refer to Defendant "Bolinger," rather than "Bollinger," as appears in
Plaintiff's *pro se* Amended Complaint.  *See, e.g.*, ECF No. 15 at 1, ECF No. 24 at
3 ¶ 10; ECF No. 38 at 4-6.  The Court defers to the spelling offered by Defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 4

On April 30, 2020, Defendant Jason Martin, Grievance Coordinator for WDOC, dismissed Plaintiff's grievance as "not grievable" as there were alternative methods for appeal.  ECF No. 24 at 3 ¶ 7; ECF No. 39 at 5 ¶ 15; ECF No. 43-1 at 4; ECF No. 46 at 5.

At some point after the hearing and on or before April 29, 2020, Plaintiff again attempted to send mail containing AHCC's COVID-19 memoranda.  ECF No. 39 at 4 ¶ 12; ECF No. 42 at 3 ¶ 7; ECF No. 46 at 4.  On April 29, 2020, Defendant Longino issued another mail rejection and infraction against Plaintiff, on the same grounds as the prior attempted mailing.  ECF No. 39 at 4 ¶ 12; ECF No. 42 at 3 ¶ 7; ECF No. 42-1 at 10-13; ECF No. 46 at 4.  On April 29, 2020, Defendant Longino exchanged a number of emails with Julie Saiz, Correctional Unit Supervisor for WDOC.  ECF No. 39 at 4 ¶ 14; ECF No. 42 at 3 ¶ 8; ECF No. 42-1 at 15-20; ECF No. 46 at 5.  Defendant Longino eventually determined that these copies of the COVID-19 memoranda were given to Plaintiff as part of his hearing packet for the hearing on his previous infraction, and not illicitly obtained. ECF No. 39 at 4-5 ¶ 14; ECF No. 42 at 3-4 ¶ 9.

The second mail rejection and infraction were dismissed, and Plaintiff's second package containing the COVID-19 memoranda was mailed on May 4, 2020.  ECF No. 39 at 5 ¶¶ 14, 16; ECF No. 42 at 4-5; ECF No. 46 at 5.  Defendant

Longino communicated the result to Plaintiff.  ECF No. 39 at 6-7 ¶ 17; ECF No. 42

at 4-5 ¶¶ 10-11; ECF No. 42-1 at 22; ECF No. 46 at 5.

On May 5, 2020, Plaintiff appealed Defendant Martin's "not grievable"

finding against his grievance related to the first infraction.  ECF No. 24 at 7; ECF

No. 39 at 6 ¶ 18; ECF No. 43-1 at 4; ECF No. 46 at 5.  On May 12, 2020,

Defendant Carol Smith, Headquarters Grievance Program Manager for WDOC,

denied the grievance appeal, upholding the decision.  ECF No. 39 at 6 ¶ 18; ECF

No. 46 at 5.  Defendant Smith also communicated to Plaintiff that "per policy you

are not allowed to send mail to the media.  The superintendent's decision on

outgoing mail of this content is final."  ECF No. 39 at 6 ¶ 18; ECF No. 46 at 5.

On August 27, 2020, Defendant Tracy Schneider, Headquarters Correctional

Manager for WDOC, upheld the rejection of Plaintiff's mail.  ECF No. 24 at 3 ¶

11; ECF No. 39 at 7 ¶ 22; ECF No. 42-1 at 2-3; ECF No. 46 at 5.[3]

On May 28, 2020, Plaintiff filed his *pro se* Complaint.  *See* ECF No. 1.  On

August 5, 2020, the Hon. Rosanna Malouf Peterson dismissed his Complaint in

part.  *See* ECF No. 9.  On August 21, 2020, Plaintiff moved to amend his

complaint and on September 23, 2020, Judge Peterson granted his motion.  *See*

---

[3] Plaintiff alleges that Defendant James Key, Superintendent at AHCC, also

"upheld" the infractions and mail rejections at issue.  ECF No. 15 at 10 ¶ 52.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 6

ECF Nos. 10, 14.  On September 23, 2020, Plaintiff filed his *pro se* Amended

Complaint.  *See* ECF No. 15.

On September 28, 2021, Plaintiff was released from WDOC custody.  ECF

No. 39 at 7 ¶ 23; ECF No. 46 at 5.

On November 23, 2021, Defendants moved for summary judgment as to all

claims.  *See* ECF No. 38.  On December 22, 2021, this matter was reassigned to the

undersigned Judge.  *See* ECF No. 48.  On February 8, 2022, the Court heard

argument on the motion.  *See* ECF No. 55.  Jeffry K. Finer appeared on behalf of

Plaintiff and Katherine J. Faber appeared on behalf of Defendants.  On February

25, 2022, the Court entered a stay pending resolution of the instant motion for

summary judgment.  *See* ECF No. 57.

## SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906

(9th Cir. 2019).  A party may move for summary judgment on part of a claim or

defense.  Fed. R. Civ. P. 56(a).  "A fact is 'material' only if it might affect the

outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact

could resolve the issue in the non-movant's favor."  *Fresno Motors, LLC v.*

*Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323 (quoting former Fed. R. Civ. P. 56(c)). A moving party who does not bear the burden of persuasion at trial will succeed on summary judgment either by producing evidence that negates an essential element of the non-moving party's claim or defense, or by showing that the non-moving party does not have enough evidence to prove an essential element. *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party has satisfied its initial burden, to survive summary judgment, the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, or admission on file, "specific facts" showing that there is a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8

1    The court "must view the evidence in the light most favorable to the

2    nonmoving party and draw all reasonable inference in the nonmoving party's

3    favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). "Credibility

4    determinations, the weighing of the evidence, and the drawing of legitimate

5    inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*,

6    477 U.S. at 255. "Summary judgment is improper where divergent ultimate

7    inferences may reasonably be drawn from the undisputed facts." *Fresno Motors*,

8    771 F.3d at 1125.

9                                **DISCUSSION**

10    Plaintiff's claims arise under 42 U.S.C. § 1983. ECF No. 15 at 1. Section

11    1983 provides, in relevant part:

12        Every person who, under color of any statute, ordinance, regulation,
         custom, or usage, of any State or Territory or the District of Columbia,
13        subjects, or causes to be subjected, any citizen of the United States or
         other person within the jurisdiction thereof to the deprivation of any
14        rights, privileges, or immunities secured by the Constitution and laws,
         shall be liable to the party injured in an action at law, suit in equity, or
15        other proper proceeding for redress . . . .

16    "[Section] 1983 is not itself a source of substantive rights, but merely provides a

17    method for vindicating federal rights elsewhere conferred." *Graham v. Connor*,

18    490 U.S. 386, 393–94 (1989) (internal quotation marks omitted). To state a claim

19    under Section 1983, a plaintiff must show that he was "deprived of a right secured

20    by the Constitution or laws of the United States, and that the alleged deprivation

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 9

1   was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526

2   U.S. 40, 49-50 (1999).

3       Section 1983 "creates a species of tort liability" and claims brought

4   thereunder "sound in tort. . . ." *City of Monterey v. Del Monte Dunes at Monterey,*

5   *Ltd.*, 526 U.S. 687, 709 (1999).  The United States Supreme Court has "interpreted

6   the statute in light of the background of tort liability." *Id.* (internal quotation

7   marks omitted).

8       Defendants seek summary judgment on five grounds:  (1) that Plaintiff's

9   claims against Defendants Martin, Smith, Bolinger, and Key should be dismissed

10  because Plaintiff cannot demonstrate these defendants personally participated in

11  the events underlying his claims; (2) that Plaintiff's censorship claims should be

12  dismissed because Plaintiff cannot demonstrate that his rights were violated; (3)

13  that Plaintiff's retaliation claims should be dismissed because Plaintiff cannot

14  demonstrate that any defendants retaliated against him for exercising his First

15  Amendment rights; (4) that Plaintiff cannot recover damages from any defendant

16  because all are entitled to qualified immunity; and (5) that Plaintiff's claims

17  seeking injunctive and declaratory relief are moot because Plaintiff is no longer in

18  WDOC custody.

19

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 10

## A. Personal Participation in the Alleged Constitutional Depravations

Defendants seek summary judgment as to Plaintiff's claims against several defendants based on their lack of personal participation in the events underlying Plaintiff's claims. Vicarious liability is inapplicable to Section 1983 suits. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Section 1983 liability "must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980)); *see also Iqbal*, 556 U.S. at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

To be liable, a person must do an affirmative act, participate in another's affirmative act, or fail to perform an act that the person is legally required to do. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). "Anyone who causes any citizen to be subjected to a constitutional depravation is also liable." *Gilbrook v. City of Westminster*, 177 F.3d 839, 854 (9th Cir. 1999) (quoting *Johnson*, 588 F.2d at 743 (9th Cir. 1978)). "The requisite causal connection can be established not only by some kind of direct personal participation in the depravation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.*

The Seventh Circuit in *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), summarized the standard as follows:

> Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.

*Id.* at 609-10. Defendants argue that the involvement of certain defendants in the events underlying Plaintiff's claims is purely supervisory in nature and insufficient to give rise to Section 1983 liability.

### 1. *Defendant Martin*

Defendants argue that Defendant Martin's "only involvement in this case was to review [Plaintiff's] grievance about his infraction and provide a Level 0 response that the grievance topic was ungrievable because there was a separate channel of formal appeal." ECF No. 38 at 4-5. The extent of Defendant Martin's role in processing and denying Plaintiff's grievance is undisputed. *See* ECF No. 39 at 5 ¶ 15; ECF No. 46 at 5. Plaintiff, without citation to binding authority[4] or

---

[4] Plaintiff, in his *pro se* Amended Complaint, offers a collection of district court decisions generally supporting a theory of supervisory liability under Section 1983. ECF No. 15 at 6 ¶ 31 n. 1. Each was decided prior to *Iqbal*, none are from within

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12

evidence,[5] argues that Defendant Martin had the authority and a duty to "consider remedial action" once aware of Plaintiff's impression that he was the subject of retaliation.  ECF No. 45 at 5; *see also* ECF No. 15 at 6 ¶ 30 ("It is my understanding that a grievance coordinator, under prevailing law, if he has been

_____

the Ninth Circuit, and the cases do not speak to the specifics of Defendant Martin's alleged duty.

[5] The evidentiary basis for the bulk of Plaintiff's allegations is his *pro se* Amended Complaint.  A complaint may serve as an affidavit opposing summary judgment if it is verified and "based on personal knowledge and set forth specific facts admissibly in evidence."  *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).  A plaintiff's verified complaint "satisfies the personal knowledge requirement where the 'allegations were not based purely on . . . belief.'"  *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (quoting *Schroeder*, 55 F.3d at 460).  Plaintiff has verified his Amended Complaint.  ECF No. 15 at 16. However, the assertions therein include factual allegations based on Plaintiff's personal knowledge, statements of Plaintiff's beliefs about facts, and legal conclusions.  The Court considers only assertions based on Plaintiff's personal knowledge for the purposes of finding a genuine dispute of material fact to survive summary judgment.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 13

1    informed of a violation through a grievance, has the authority to correct it, and

2    does not do so, may be held liable.").

3          Even if Defendant Martin had such authority, which is not clear from the

4    record, prison grievance procedures do not confer substantive rights upon which

5    Section 1983 liability may be founded.  *Burton v. Schneider*, Case No. 3:15-CV-

6    05862-BHS-JRC, 2016 WL 8223269, at *3 (W.D. Wash. Nov. 29, 2016) (citing

7    *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)).  Plaintiff fails to offer

8    evidence that Defendant Martin personally participated in the alleged First

9    Amendment violation, namely, the rejection of his outgoing mail, or personally

10   participated in any adverse action constituting retaliation for his exercise of his

11   First Amendment rights.

12         There is no genuine dispute of material fact as to Defendant Martin's

13   personal participation in the events at issue.  Plaintiff's claims against Defendant

14   Martin fail as a matter of law.  The Court grants summary judgment as to all claims

15   against Defendant Martin.

16         *2.  Defendant Smith*

17         Defendants argue that Defendant Smith, like Defendant Martin, did not

18   personally participate in the alleged constitutional depravations, and "only

19   provided a Headquarters response to [Plaintiff's] appeal of the non-grievable

20

1  finding." ECF No. 38 at 5.  Indeed, Defendant Smith merely upheld Defendant

2  Martin's finding.  ECF No. 39 at 6 ¶ 18; ECF No. 46 at 5.

3       Plaintiff raises, briefly, Defendant Smith's mistaken communication to

4  Plaintiff that "per policy you are not allowed to send mail to the media.  The

5  superintendent's decision on outgoing mail of this content is final.  Appeal

6  denied." ECF No. 45 at 5-6.  Defendants concede that Defendants Smith was

7  mistaken.  ECF No. 38 at 7.

8       Judge Peterson, screening Plaintiff's initial *pro se* Complaint under the

9  Prison Litigation Reform Act of 1995, found that "Plaintiff's Complaint—which

10 pleads facts alleging that Defendant Smith notified him that prison policy

11 prohibited Plaintiff from sending mail to the media—states a First Amendment

12 claim against Defendant Smith that is cognizable under *Procunier*."  ECF No. 9 at

13 17-18 (citing *Procunier v. Martinez*, 416 U.S. 396 (1974).  From Plaintiff's initial

14 Complaint, Judge Peterson allowed only his claim against Defendant Smith to

15 continue.  *See* ECF No. 9.  Judge Peterson later permitted Plaintiff to amend his

16 complaint and, upon an additional screening, permitted him to continue with his

17 *pro se* Amended Complaint.  *See* ECF No. 14.

18       Under *Procunier v. Martinez*, "censorship of prisoner mail is justified if [(1)]

19 the regulation or practice in question further[s] an important or substantial

20 governmental interest unrelated to the suppression of expression . . . [, and (2)] the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 15

1    limitation of First Amendment freedoms must be no greater than is necessary or

2    essential to the protection of the particular governmental interest involved."  416

3    U.S. at 414, *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401

4    (1989) (limiting the standard applied in *Procunier* to prison policies involving

5    outgoing prisoner mail).

6        The Court now has the benefit of the parties' undisputed material facts,

7    supporting declarations, and legal briefing.  *See* ECF Nos. 38-47, 49.  It is true that

8    Defendant Smith communicated to Plaintiff a policy that would undoubtedly

9    violate his First Amendment rights under *Procunier*.  ECF No. 39 at 6 ¶ 18; ECF

10   No. 46 at 5.  However, it is undisputed that Defendant Smith was mistaken in her

11   communication, and there was no codified policy in place at AHCC prohibiting

12   Plaintiff from communicating with the media.  ECF No. 39 at 6-7 ¶¶ 19-20; ECF

13   No. 46 at 19.

14       More importantly, the Court now has the benefit of the context of Defendant

15   Smith's role in the events underlying Plaintiff's claims.  It is undisputed that

16   Defendant Smith merely reviewed and upheld Defendant Martin's findings against

17   Plaintiff's grievance related to the first infraction.  ECF No. 39 at 6 ¶ 18; ECF No.

18   46 at 5.  Plaintiff offers no evidence that Defendant Smith personally rejected

19   Plaintiff's mail or retaliated against him for his attempt to communicate with the

20   media.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 16

1    There is no genuine dispute of material fact as to Defendant Smith's

2    involvement in the events underlying the events at issue.  Plaintiff's claims against

3    Defendant Smith fail as a matter of law.  For the same reasons as articulated above

4    in relation to Defendant Martin, the Court grants summary judgment as to all of

5    Plaintiff's claims against Defendant Smith.

6        *3.  Defendants Bolinger and Key*

7    Plaintiff conceded at oral argument that summary judgment should be

8    granted in favor of Defendants Bolinger and Key because neither caused nor was

9    sufficiently involved in the constitutional violations of which Plaintiff complains.

10   The Court therefore grants summary judgment as to Plaintiff's claims against

11   Defendants Key and Bolinger.

12   **B. Censorship**

13   Defendants argue that Plaintiff's remaining censorship claims must be

14   dismissed because Plaintiff cannot show that his First Amendment rights were

15   violated.  ECF No. 38 at 6.  Prisoners have a First Amendment right to send and

16   receive mail.  *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  As

17   stated above, censorship of outgoing prisoner mail is justified only if the regulation

18   (1) "[furthers] an important or substantial government interest unrelated to the

19   suppression of expression" and (2) the limitation of First Amendment freedoms is

20   "no greater than is necessary or essential to the protection of the particular

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 17

governmental interest involved." *Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008) (citing *Procunier*, 416 U.S. at 412). Substantial government interests that may justify censorship of outgoing prisoner mail are security, order, and rehabilitation. *Procunier*, 416 U.S. at 413.

As an initial matter, Defendants begin by offering their policy regarding communications between incarcerated individuals and the news media. ECF No. 38 at 6. It is undisputed that WDOC has codified policies that permit prisoner communication with the media. ECF No. 39 at 6-7 ¶¶ 19-20; ECF No. 46 at 5. However, as Plaintiff explains, "the scope and legitimacy of the Unauthorized Mail policy itself is not at issue. The issue is whether the Defendants have a true basis to reject [Plaintiff's] effort to mail the Memorandum to Fox News." ECF No. 45 at 11. It is the conduct of the defendant officers at issue, not WDOC policy.

### 1. Plaintiff's Censorship Claims Arising from the Second Mail Rejection and Infraction

Defendants argue that the second mail rejection and infraction, issued against Plaintiff on April 29, 2020, cannot support Plaintiff's claims because these decisions were ultimately reversed, and the mail sent. Defendants cite to the Ninth Circuit's decision in *Crofton v. Roe*, which held that a temporary delay in delivering publications to a prisoner did not violate the prisoner's First Amendment rights. 170 F.3d 957, 961 (9th Cir. 1999). In *Crofton*, a prison's

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 18

security inspection caused the delay, which was reasonably related to the prison's interest in inspecting mail for contraband.  *Id.*

The same logic applies to this case.  Consistent with the text of Section 1983, general tort principles, and Article III of the United States Constitution, a Section 1983 plaintiff must demonstrate injury.  42 U.S.C. § 1983 (A person who, acting under color of law, deprives another of a Constitutional or federal right "shall be liable *to the party injured*.") (emphasis added); *see Saved Mag. v. Spokane Police Dep't*, 505 F. Supp. 3d 1095, 1104 (E.D. Wash. 2020), *aff'd*, 19 F.4th 1193 (9th Cir. 2021) ("To plead a section 1983 violation . . . Plaintiffs must allege that they suffered a specific injury.") (citing *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976)).  While an injury need not always be tangible, "it must actually exist."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

There is no dispute that Plaintiff's second attempt to send the COVID-19 memoranda by mail to the news media was effectuated on May 4, 2020, less than a week from the date of his second attempt.  The delay does not amount to a cognizable constitutional depravation for the purposes of a Section 1983 claim.  The delay was due to AHCC's legitimate interest in regulating outgoing mail from incarcerating persons.  To the extent that Plaintiff offers the second mail rejection and infraction as support for his First Amendment claims, the Court grants summary judgment in favor of Defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 19

1      *2. Plaintiff's Censorship Claims against Defendant Longino*

2          Defendants argue that Defendant Longino's initial rejection of Plaintiff's

3   mail to the media was justified under *Procunier* as "further[ing] one or more of the

4   substantial government interests of security, order, and rehabilitation" and was a

5   limitation "no greater than . . . necessary or essential to the protection of the

6   particular governmental interest involved." ECF No. 38 at 8 (quoting *Procunier*,

7   416 U.S. at 413). Defendants argue that "protecting prison security . . . is central

8   to all other corrections goals[,]" ECF No. 38 at 8 (citing *Thornburgh*, 490 U.S. at

9   415) (quotations omitted), and that WAC 137-28-220 #053 legitimately prohibits a

10  prisoner from possession of items not authorized for retention or receipt, or not

11  issued through approved channels. Defendants offer the Declaration of Defendant

12  Longino for her assertion that she rejected Plaintiff's mail because it contained two

13  COVID-19 memoranda that Plaintiff was not authorized to have. ECF No. 39 at 2

14  ¶ 4; ECF No. 42 at 1-2 ¶ 3.

15         Defendants' Undisputed Statement of Fact 4 provides that "[Plaintiff's] mail

16  contained two memos about COVID-19 which were posted in the units at [AHCC]

17  for all offenders to view. Longino believed Townsend was not authorized to take

18  the state copy of the memo and send it out[.]" ECF No. 39 at 2 ¶ 4. Plaintiff does

19  not dispute Fact 4. ECF No. 46 at 2. However, elsewhere, he alleges that he

20  received a copy of the COVID-19 memoranda underneath his cell door, rather than

took a copy from a public posting board.  ECF No. 15 at 3-4 ¶¶ 15, 17; ECF No. 45

at 1-2; ECF No. 46 at 2.

Plaintiff argues that Defendants "have failed to express a legitimate

penological basis for refusing to process [Plaintiff's] mail based on ungrounded

suspicion alone that [his] correspondence had unauthorized copies of admitted

public notices."  ECF No. 45 at 13.  Plaintiff does not contest in the pleadings and

admitted at oral argument that, if he had taken the COVID-19 memoranda from a

public posting board, mail rejection and infraction would have been appropriate

measures.  This position is consistent with the relevant case law.  *See, e.g.*,

*Witherow v. Crawford*, 468 F. Supp. 2d 1253, 1261 (D. Nev. 2006) ("Prison

officials may . . . visually inspect out-going mail to determine whether it contains

contraband material which threatens prison security or material threatening the

safety of the recipient.").

Instead of challenging the constitutionality of Defendant Longino's reason

for rejecting his mail, Plaintiff seeks to relitigate the factual basis of the rejection.

Defendant Longino declares that an unnamed officer called to inform her that no

one had made or distributed copies of the publicly posted COVID-19 memoranda

to prisoners.  ECF No. 42 at 2-3 ¶ 5.  Therefore, she believed Plaintiff had no other

way to obtain the COVID-19 memoranda other than to take them from a public

board.  ECF No. 39 at 2-3 ¶ 6; ECF No 42 at 2-3 ¶ 5.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 21

In contrast, Plaintiff offers that the copies he attempted to send lacked "staple wounds," which, if the copies were posted on a public board, would be present on the page. ECF No. 15 at 5-6 ¶¶ 21, 23. Plaintiff asserts that he lacked access to the public board during the time in question. ECF No. 15 at 11 ¶ 61. Plaintiff offers evidence of an infraction issued to another prisoner, who was also found guilty of possession of two "notifications" that were "required to remain in the unit." ECF No. 47 at 4. In that prisoner's appeal, the Disciplinary Hearing Officer found that "the documents that [the prisoner] had acquired were actually copies that had not been obtained from the bulletin board and may have in fact been given to [the prisoner] by staff" and that "there were some documents that were disturbed to all offenders by sliding them under your cell doors." ECF No. 47 at 4.

The dispute over where Plaintiff received the COVID-19 memoranda is not material to his censorship claim. Plaintiff's claims do not arise out of any alleged failure of due process or deficiency in AHCC's mail rejection proceedings. Plaintiff claims that Defendants censored him in violation of his First Amendment rights. The Court therefore narrows focus to the decision to reject Plaintiff's mail.

In more typical outgoing prisoner mail censorship cases such as *Barrett v. Belleque*, 544 F.3d 1060 (9th Cir. 2008), a prisoner's mail is rejected according to some prison policy, the prisoner challenges the rejection as unconstitutional, and

1  the prison defends the rejection as justified under *Procunier*.  *Id.* at 1062.  In such

2  cases, the prison's offered justification is not factually disputed, the parties quarrel

3  over the constitutionality of the justification.  *Id.*; *see also Procunier*, 416 U.S. at

4  398-99; *Riggins v. Clarke*, 403 Fed. Appx. 292, 294 (9th Cir. 2010); *Witherow v.*

5  *Paff*, 52 F.3d 264, 265-266 (9th Cir. 1995); *Pederson v. Schneider*, 575 F. Supp. 3d

6  1339, 1348-1351 (W.D. Wash. 2021).  Here, the dispute is whether the prison's

7  offered justification is pretextual.

8       Plaintiff, in his response to Defendants' undisputed facts, does not dispute

9  that Defendant Longino believed his mail contained contraband.  ECF No. 46 at 2.

10  However, in his response to the motion for summary judgment, Plaintiff advances

11  a theory that Defendants attempted to "stop[] copies of its formal notice to imates

12  [sic] from reaching [Plaintiff's] intended audience:  journalist capable of

13  researching and publishing/broadcasting on the matter."  ECF No. 45 at 14.

14  Plaintiff argues that Defendants held "animus toward [Plaintiff's] effort to make

15  [WDOC's] no-mask policy public."[6]  ECF No. 45 at 13.  At oral argument,

16

17  [6] The Court was not provided a copy or image of the COVID-19 memoranda at

18  issue.  According to Plaintiff's *pro se* Amended Complaint, the memoranda

19  included instruction from the "superintendent" that "face masks would be issued,

20  but staff were not required to wear them."  ECF No. 15 at 3 ¶ 14.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 23

1   Plaintiff's counsel accused Defendant Longino of acting in bad faith and

2   questioned her offered justification for the mail rejection.  Plaintiff alleges that

3   Defendant Longino lied at the April 26, 2020 infraction hearing, by claiming that

4   Plaintiff admitted to possession of a copy of the COVID-19 memoranda without

5   authorization.  ECF No. 15 at 4-5 ¶ 23; ECF No. 46 at 3.  Plaintiff argues that

6   Defendant Longino's "allegations are an intentional deception to support the

7   adverse actions" against him.  ECF No. 15 at 4 ¶ 20.

8        Plaintiff's briefing lacks citation to factual material supporting his theory.

9   The Court resorts to Federal Rule of Civil Procedure 56(c)(1), which provides as

10  follows:

11       (1) *Supporting Factual Positions.*  A party asserting that a fact . . . is
         genuinely disputed must support the assertion by:

12

13           (A) citing to particular parts of materials in the record, including
             depositions, documents, electronically stored information,
14           affidavits or declarations, stipulations (including those made for
             purposes of the motion only), admissions, interrogatory answers,
15           or other materials; or

16           (B) showing that the materials cited do not establish the absence
             . . . of a genuine dispute, or that an adverse party cannot produce
17           admissible evidence to support the fact.

18  While Plaintiff's *pro se* Amended Complaint is verified and may serve as an

19  affidavit in opposition to summary judgment, the assertions therein must be made

20  on personal knowledge to raise a genuine dispute of fact.  Fed. R. Civ. P. 56(c)(4);

    *Strong*, 724 F.3d at 1045.  Plaintiff's assertions as to Defendant Longino's motive

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 24

1  for rejecting his mail are not based upon his personal knowledge, they are rooted in

2  his belief that he was censored to prevent the media from seeing AHCC's COVID-

3  19 policy. *See Columbia Pictures Indus. v. Prof'l Real Estate Investors, Inc.*, 944

4  F.2d 1525, 1529 (9th Cir. 1991) ("Because [affiant's] declaration is not based on

5  personal knowledge, but on information and belief, his statement does not raise a

6  triable issue of fact.").

7       To summarize, Defendant Longino submits that she rejected Plaintiff's mail

8  due to her belief that Plaintiff had obtained the COVID-19 memoranda illicitly.

9  Plaintiff asserts in his verified complaint and in briefing that Defendant Longino

10  rejected his mail as part of a coordinated attempt to censor his communications

11  with the media, to conceal the prison's response to the COVID-19 pandemic from

12  the public.  Plaintiff does not cite to any materials in the record that raise a factual

13  dispute as to Defendant Longino's justification. Fed. R. Civ. P. 56(c)(1)(A).  To

14  the contrary, while Plaintiff provides evidence that Defendant Longino was

15  mistaken and challenges the reasonableness of her belief, he admits that Defendant

16  Longino believed his possession of the COVID-19 memoranda was not authorized.

17  ECF No. 46 at 2 (responding "NOT DISPUTED" to Defendants' Statement 4).

18  Thus, while Plaintiff appears to dispute the purpose of his mail rejection, he has

19  not provided evidence demonstrating that the dispute is genuine.

20

1    Essential to Plaintiff's claim is that Defendant Longino's censorship of his

2    mail was unjustified. *Barrett*, 544 F.3d at 1062. Plaintiff has offered no evidence

3    raising a genuine dispute that his mail was censored for any reason other than to

4    prevent prisoners from possessing items which they are not authorized to have.

5    The Court grants summary judgment as to Plaintiff's censorship claims against

6    Defendant Longino.

7    ### 3. *Plaintiff's Censorship Claims against Remaining Defendants*

8    Plaintiff maintains claims of censorship against Defendant Westfall, who

9    upheld Defendant Longino's mail rejection at the Superintendent/designee level,

10    ECF No. 42-1 at 2, and Defendant Schneider, who upheld the rejection at the

11    headquarters level, ECF No. 42-1 at 2-3. Plaintiff offers no factual basis for his

12    claims against Defendants Westfall and Schneider other than their review of

13    Defendant Longino's mail rejection. As found above, Plaintiff raises no genuine

14    dispute of as to Defendant Longino's legitimate basis for rejecting his mail.

15    Plaintiff fails to dispute that Defendants Westfall and Schneider were similarly

16    justified in upholding Defendant Longino's mail rejection. The Court grants

17    summary judgment as to Defendants Westfall and Schneider.

18    **C. Retaliation**

19    To demonstrate First Amendment retaliation by prison officials, a plaintiff

20    must show: (1) that a state actor took some adverse action against a prisoner (2)

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 26

because of (3) that prisoner's protected conduct, and that such action (4) would chill or silence a person of ordinary firmness from future First Amendment activities, and (5) the retaliatory action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted); *see also Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009).

"[P]rison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (collecting cases). However, the Ninth Circuit has "repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient" to survive summary judgment. *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). A court "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

Plaintiff claims that Defendants retaliated against his attempt to contact the media. Plaintiff claims retaliation by Defendants Longino, Aldendorf, Bolinger, Martin, and Smith for "writing an infraction against him . . . , or by participating or

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 27

1    sanctioning the infraction process . . . .” ECF No. 15 at 14 ¶ 74.  Plaintiff claims

2    retaliation by Defendants Longino, Westfall, Key, Martin, Smith, and Schneider

3    for “generating knowingly false allegations leading to mail restriction and

4    infraction, and in sanctioning these false reports to uphold the infractions and mail

5    rejections.” ECF No. 15 at 16 ¶ 75.  The Court has found, above, that Defendants

6    Martin, Smith, Bolinger, and Key lacked the requisite personal participation in any

7    alleged depravations of constitutional rights and therefore Plaintiff’s retaliation

8    claims against those defendants fail.

9         As previously explained, prisoners have a right to send and receive mail.

10   *Witherow*, 52 F.3d at 265.  The infractions and mail rejections at issue, as well as

11   the alleged false allegations giving rise to mail restriction and infractions, would

12   undoubtedly “chill or silence a person of ordinary firmness from future First

13   Amendment activities,” and therefore constitute adverse action for the purposes of

14   retaliation.  *Watison*, 668 F.3d at 1114.

15        Plaintiff must produce evidence that raises a genuine dispute as to

16   Defendants’ motive for the adverse actions.  “In the First Amendment context, a

17   plaintiff creates a genuine issue of material fact on the question of retaliatory

18   motive when he or she produces [1] evidence that the defendant knew of the

19   protected speech, [2] evidence of proximity in time between the protected speech

20   and the allegedly retaliatory decision, [3] evidence that the defendant expressed

ORDER GRANTING DEFENDANTS’ MOTION FOR SUMMARY
JUDGMENT - 28

opposition to the speech or [4] evidence that the defendant's proffered reason for the adverse action was false or pretextual." *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (emphasis removed).  Plaintiff need only "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact. . . ." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citations omitted).

The record includes evidence that each Defendant took adverse action against Plaintiff immediately upon learning that Plaintiff had attempted to contact the media, or, at a minimum, as much is easily inferred from the record.  ECF No. 39 at 2-7 ¶¶ 3, 7, 9, 15, 18, 22; ECF No. 42-1; ECF No. 46 at 2-5.  Plaintiff has therefore produced evidence of proximity in time and Defendants' awareness of the protected activity.  However, the significance of this evidence is somewhat mitigated by the necessary relatedness of the adverse action and Defendants' awareness.  This is not a case where an adverse action is wholly unrelated from a protected activity and gives rise to an inference of motive.  *See, e.g.*, *Brodheim*, 584 F.3d at 1265-66 (prison officer threatened prisoner with transfer after prisoner submitted grievances against him); *Bruce*, 351 F.3d at 1288-1287 (prisoner was determined to be a gang member after filing grievances regarding inadequate prison conditions).  Here, the event which alerted each defendant to Plaintiff's protected activity is the same event in which the defendant took adverse action

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 29

against him.  Further, "timing alone, though possibly sufficient to establish a prima

facie case for retaliation, will not suffice . . . to defeat a motion for summary

judgment. . . ."  *Wilson v. City of Fountain Valley*, 372 F. Supp. 2d 1178, 1191

(C.D. Cal. 2004) (collecting cases); *see also Quiroz v. Horel*, 85 F. Supp. 3d 1115,

1134 (C.D. Cal. 2015) (citing *Pratt*, 65 F.3d at 808).

        Absent from the record is evidence that Defendants expressed opposition to

Plaintiff's protected speech.  There is no evidence as was in *Bruce v. Ylst*, for

example, that the officers voiced opposition to his protected activity.  *Bruce*, 351

F.3d at 1289.  In *Bruce*, the plaintiff produced evidence that a defendant officer

made comments such as "[t]he higher-ups want you [marked as a gang member] to

make an example out of you do discourage similar complaints and protests . . . ."

*Id.; see also Schroeder*, 55 F.3d at 460 ("[Plaintiff] demonstrated his personal

knowledge by citing two specific instances where correctional staff members . . .

made statements from which a jury could reasonably infer a retaliatory motive. . .

."); *Jones v. Mora*, Case No. 20-CV-04093-TSH, 2021 WL 1531448, at *1 (N.D.

Cal. Apr. 19, 2021) (before performing a sexually invasive search, a prison officer

said:  "This is one of them who have wrote me up, search his ass"); *Perkins v.

Angulo*, Case No. 3:18-CV-0850-DMS, 2021 WL 948804, at *3 (S.D. Cal. Mar.

12, 2021) (After denying a family visiting application, a prisoner appealed the

1  denial, and the reviewing officer said: "If you withdraw [a pending complaint

2  against the officer] maybe your application wont [sic] be denied.").

3      According to Plaintiff's own allegations, Defendants consistently explained

4  the mail rejections and infractions as issued due to Plaintiff's unauthorized

5  possession of the COVID-19 memoranda. The notion that Defendants opposed

6  Plaintiff's contact with the media is further undermined by the undisputed fact that,

7  ultimately, Defendants approved his mail after the concern of his supposedly

8  unauthorized possession was dispelled. ECF No. 39 at 5 ¶ 16; ECF No. 46 at 5. In

9  fact, the prison allowed another prisoner in similar circumstances to contact the

10  media after the issue of his unauthorized possession was dispelled. ECF No. 47 at

11  4.

12      The final consideration for retaliatory motive is "evidence that the

13  defendant's proffered reason for the adverse action was false or pretextual."

14  *Corales*, 567 F.3d at 568. As explained above, Plaintiff attempts to relitigate the

15  origin of his copy of the COVID-19 memoranda and provides evidence that the

16  copy he first attempted to mail was slid under his cell door and not taken from a

17  public board. Yet, Plaintiff admits that Defendant Longino believed that his mail

18  contained material he was not authorized to possess. ECF No. 39 at 2 ¶¶ 3-4; ECF

19  No. 46 at 2.

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 31

1    Relating to the second rejection of his mail, Plaintiff alleges that Defendant

2    Longino lied because she had been informed by Defendant Aldendorf as to the

3    origin of the copies of the COVID-19 memoranda in his second mail package.

4    ECF No. 15 at 7 ¶ 38.  The Court cannot take as fact Plaintiff's allegations as to

5    conversations for which he was not present.  *Strong*, 724 F.3d at 1045.  Further as

6    explained, the second mail rejection was reversed as soon as Defendant Longino

7    determined that Plaintiff was permitted to possess the COVID-19 memoranda that

8    he was mailing out.  ECF No. 39 at 5 ¶ 17; ECF No. 46 at 5.  Plaintiff merely

9    asserts in argument that Defendants' proffered reason is pretextual.  He offers no

10    evidence from which a jury could make such a finding.

11    Critically, Plaintiff, with counsel and after opportunity for discovery, has

12    failed to place in the record any factual material supporting a nefarious motive to

13    silence Plaintiff.  Retaliatory motive has often been found where prison officials

14    attempt to silence a prisoner who, in their estimation, files too many grievances.

15    *See, e.g.*, *Bruce*, 351 F.3d at 1288 ("[Plaintiff] offered the suspect timing of the

16    validation--coming soon after his success in the prison conditions grievances.");

17    *Rhodes*, 408 F.3d at 562, 567 (". . . because purely retaliatory actions taken against

18    a prisoner for having exercised [his right to file a grievance], such actions violate

19    the Constitution. . . .").  Or, retaliation against a prisoner who files too many

20    lawsuits challenging prison officer conduct.  *Schroeder*, 55 F.3d at 460 (prisoner

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 32

1   wrote a letter to a branch administrator complaining about infrastructure and

2   maintenance).  In these cases, it is reasonable for a jury to infer that a prison officer

3   would retaliate against protected activities that might have negative consequence

4   for that officer.

5        Here, Plaintiff presents no facts supporting a similar reasonable inference.

6   Plaintiff's claims seem to charge, though not explicitly, that AHCC's COVID-19

7   policy was controversial.  However, there is no indication from the record that any

8   of the individually named defendants had a hand in formulating the policy, was at

9   risk of repercussion from its publication, adhered to it or failed to adhere to it, or

10  otherwise had any stake in the policy remaining concealed from the public.

11  Plaintiff would leave the fact finder to speculate without factual basis as to the

12  Defendants' motive for preventing Plaintiff from publicizing AHCC's COVID-19

13  policy.  No reasonable jury could find a motive and, therefore, Plaintiff fails to

14  demonstrate that this dispute is genuine.  *Fresno Motors*, 771 F.3d at 1125.

15       After showing a retaliatory motive, a Plaintiff "bears the burden of pleading

16  and proving the absence of legitimate correctional goals for the conduct of which

17  he complains."  *Bruce*, 351 F.3d at 1289.  Plaintiff argues that "[Defendant]

18  Longino's actions of generating a knowingly false report and infraction in order to

19  confiscate outgoing mail . . . where the contents do[] not threaten the security of

20  the prison or the recipient" does not advance a legitimate penological interest.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 33

ECF No. 15 at 6 ¶ 34, 9 ¶ 44.  The contents of Plaintiff's outgoing mail do not raise any security risk.  However, to survive summary judgment, Plaintiff must raise a genuine dispute as to whether the prohibition of prisoner possession of unauthorized materials is a legitimate goal.

In *Bruce*, the adverse action at issue was that prison officers "validated" the plaintiff as a gang member.  351 F.3d at 1286-87.  The Ninth Circuit explained that there was a legitimate penological interest in stopping gang activity, but, if the defendants were using the validation procedure "as a cover or a ruse to silence and punish" the plaintiff for his protected activity, the procedure would lose its validity.  *Id.* at 1289.  There is some parallel, here, as Plaintiff alleges that Defendants abused the mail rejection and infraction procedure to prevent him from sending mail to the media.  However, the plaintiff in *Bruce* was able to point to facts in the record showing that the adverse action was a ruse.  351 F.3d at 1288-89.  Plaintiff, in comparison, merely lodges conclusory allegations unsupported by evidence.

The Court finds, particularly in light of the Ninth Circuit's instruction that courts "should afford appropriate 'deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory[,]" that Plaintiff fails to genuinely dispute that Defendants lacked a retaliatory motive and that their conduct served a legitimate penological goal.

*Pratt*, 65 F.3d at 807 (quoting *Sandin*, 515 U.S. at 482).  The Court grants

summary judgment for Defendants as to Plaintiff's retaliation claims.

### D. Qualified Immunity and Mootness

As Plaintiff's claims do not survive summary judgment, the Court need not

address at length the remaining arguments in Defendants' summary judgment

motion, which amount to affirmative defenses precluding Plaintiff's claims or an

aspect thereof.  With regard to qualified immunity, there are no claims left for

which qualified immunity may serve as a defense.  *Mitchell v. Forsyth*, 472 U.S.

511, 526 (1985).

Turning to mootness, Plaintiff was released from AHCC to community

supervision in September 2021.  ECF No. 41-1 at 2; ECF No. 39 at 7.  Article III

of the United States Constitution restricts federal courts to cases and controversies.

*Alvarez v. Hill*, 667 F.3d 1061, 1063 (9th Cir. 2012).  "An inmate's release from

prison while his claims are pending generally will moot any claims for injunctive

relief relating to the prison's policies unless the suit has been certified as a class

action."  *Id.* (quoting *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) (internal

quotation marks omitted)).  "The same is true for claims seeking declaratory

relief."  *Id.*  Plaintiff's claims for injunctive and declaratory relief are moot and

Defendants are entitled to summary judgment on Plaintiff's requests for such

relief.

**CONCLUSION**

For the reasons stated herein, the Court grants summary judgment as to the entirety of Plaintiff's claims.

Accordingly, **IT IS ORDERED:**

1.    Defendants' Motion for Summary Judgment, **ECF No. 38**, is **GRANTED**.

2.    All claims are **DISMISSED WITH PREJUDICE,** with all parties to bear their own costs and attorney fees.

3.    All other pending motions are **DENIED AS MOOT**.

4.    All hearings and other deadlines are **STRICKEN**.

5.    The Clerk's Office is directed to **ENTER JUDGMENT** in Defendants' favor and **CLOSE** this file.

The District Court Executive is directed to file this Order and Judgment accordingly, provide copies to all counsel, and close the file.

DATED October 26, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 36